**Welles King EGNER, Petitioner,**

v.

**Dr. R. O. SETTLE, Warden, Respondent.**

**No. 13821.**

United States District Court
W. D. Missouri, W. D.

Sept. 27, 1962.

Welles King Egner, petitioner, pro se.

F. Russell Millin, U. S. Dist. Atty., for respondent.

JOHN W. OLIVER, District Judge.

On May 18, 1962, by written memorandum and order, we refused to pass on petitioner's application for a writ of habeas corpus in light of a then pending motion filed by petitioner pursuant to § 2255, Title 28 United States Code, before the United States District Court for the Northern District of Mississippi. Petitioner has recently filed additional documents which we consider either as an amendment to his initial application or as a new application for habeas corpus.

It could be gleaned from those documents that Judge Clayton of the District Court in Mississippi took some sort of action in connection with the § 2255 motion; that petitioner's residence is in McHenry, Illinois; that he believes that Judge Clayton should have sent him immediately to a State hospital in the State of Illinois rather than ordering him returned to Springfield Medical Center for Federal Prisoners; and that the nearest state hospital to his residence

in Illinois is that located in Elgin, Illinois.

Thereafter, and at the Court's request, respondent, pursuant to § 2249, Title 28 United States Code, forwarded copies of the necessary legal proceedings to support his custody of petitioner. Included was Judge Clayton's order of June 13, 1962. That order shows on its face that Judge Clayton considered not only petitioner's § 2255 motion but that he simultaneously passed upon a motion filed by the United States Attorney of his District "for a judicial determination of the mental competency of Welles King Egner". Judge Clayton's Order recited that petitioner was physically present for the hearing on both motions and that he was represented by a Guardian Ad Litem, who was in turn represented by counsel.

The order found that "there is probable cause to believe that Welles King Egner was mentally incompetent at the time of his conviction; that the issue of his mental competency was not raised or determined before or during trial; and that the sentence heretofore imposed by this Court should be vacated and set aside". In another portion of the Order, petitioner's sentence imposed January 12, 1960 was specifically "vacated and set aside".

In regard to the Government's motion, the Court found as a fact that "Welles King Egner is so mentally incompetent, under the provision of § 4244, Title 18 United States Code, as to be unable to understand the proceedings against him or properly to aid in his own defense of the criminal charges pending against him".

The Court expressed the opinion that "pursuant to the provisions of § 4246,

Title 18 United States Code, the accused, Welles King Egner, should be remanded to the custody of the Attorney General or his authorized representatives until he becomes mentally competent to stand trial or until such time as the charge pending against him is disposed of according to law". Judge Clayton specifically ordered petitioner be delivered to the Medical Center, pursuant to § 4246.[1]

It is apparent that petitioner is properly confined at the present time pursuant to § 4246, which provides, subject to the further power granted respondent in § 4248, that he shall remain in custody "until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law". § 4248, however, vests further power in the Attorney General or his authorized representative, "at any time to transfer a prisoner committed to his custody under the authority of section 4246 * * * to the proper authorities of the State of his residence".

On August 16, 1962, respondent advised the Court that "efforts toward state hospitalization are in progress". But on August 29, 1962, respondent further advised that:

"I regret that I have no progress to report in the matter of securing hospitalization for Welles King Egner, P–524–H. The U. S. Attorney in his committing district was ready to dismiss in this case, but I requested that they hold up pending establishment of his residence and acceptance for hospitalization. However, the State of Illinois has not yet been able to verify his entitlement to treatment there, although the investigation is continuing".

---

1. Somewhat inconsistently, Judge Clayton's order also provided that in the event the charge against the accused is disposed of without the accused standing trial, then pursuant to § 4247 and § 4248, Title 18 United States Code, the commitment should run in accordance with the provisions of those Sections. This portion of the order is inconsistent because a commitment under § 4247 may be made only after a hearing by the "court for the district in which the prisoner is *confined*". The petitioner was confined in the Western District of Missouri. In addition there is no evidence that the requisite certificate was filed by the Board of Examiners in order to commence a hearing pursuant to that Section. Petitioner is not confined under this portion of the order so that the legal question is academic.

It being apparent that a situation not dissimilar from that presented in Clark v. Settle, (W.D.Mo.) 206 F.Supp. 74, (1962), was beginning to develop, the Court has reviewed the Classification data of the United States Bureau of Prisons, together with the Special Progress reports supplementing that data. There can be no dispute but that petitioner was born in Chicago; that his place of residence is consistently stated to be McHenry, Illinois; that he was an inmate of Dixon State Hospital located in Dixon, Illinois, for a period of time extending from 1944 to 1957; and that, although defendant may have aimlessly roamed several states in the very recent past, he has never acquired any legal residence or domicile in any state other than that of Illinois. We do not reiterate what we said in Clark but the factual picture presented here is completely comparable and the principles of law there stated are applicable to this case.

The Interstate Compact of Mental Health does not include as a party the United States. Nor does that instrument of State cooperation make any provision for the transfer of inmates from penal institutions. The double gap in existing legislation means that the procedures for transfer from Federal to State custody is indeed cumbersome and awkward. Sometimes the lack of mutual understanding of the controlling legal principles creates the type of legal problems dealt with in the Clark case, to which we have referred, in Craft v. Settle, (W.D.Mo.) 205 F.Supp. 775 (1962), and in the cases cited in those two cases.

In order to permit a further exploration of this matter by all authorities involved, and in the exercise of the power conferred on this Court by § 2243 of Title 28 United States Code, to dispose of applications for habeas corpus "as law and justice require", we determine, find and order:

1. That respondent's determination that petitioner is a resident of Illinois within the meaning of Chapter 313 of Title 28 United States Code, is legally correct and that no other determination can reasonably be made on the basis of presently available evidence.

2. That the State officials in charge of the Illinois Mental Health program are the "proper authorities" of that State within the meaning of § 4248, Title 28 United States Code, and that respondent's efforts to transfer petitioner to those authorities is a proper and legal effort.[2]

3. That respondent transmit to the Illinois authorities a copy of this Memorandum and Order and that he shall, in his letter of transmittal, direct attention to the decisions in Craft v. Settle, (W.D.Mo.) 205 F.Supp. 775 (1962), and Clark v. Settle, (W.D.Mo.) 206 F.Supp. 74 (1962), above cited, in order that the Illinois Mental Health authorities may seek legal advice and guidance from the appropriate legal officers of that State.

4. That respondent advise this Court of the response of the Illinois authorities so that it will know whether it may avoid being placed in the undesired and unpleasant position of being forced to issue an order requiring that respondent deliver petitioner to an appropriate place in Illinois for release.

As we have stated both in Craft and in Clark, and in connection with other cases not reported, we are confident that the

2. Respondent's effort to have all charges against petitioner dismissed so that the same may be said to be "disposed of according to law" within the meaning of § 4246 is noted and his effort in that connection is approved. The Court takes judicial notice of the fact that there are many institutions, both State and Federal, that will not accept for medical treatment any person against whom any criminal charge is pending. We would be reasonably certain that the indicated cooperation from the United States Attorney in Mississippi will be forthcoming if required by the Illinois authorities.

Federal and State authorities have equal concern in the solution of the problems created by the very nature of this type of case and that given a reasonable period of time the two sovereignties should be able to reach an understanding consistent with petitioner's rights which will avoid the necessity of judicial action.

In order to permit this cooperative effort to go forward, all proceedings in this case will be stayed for a period of twenty (20) days. We believe that by permitting respondent this length of time to report, he will be able to comply with this Order and, hopefully, to report favorably in regard to his communications with the proper authorities in Illinois.

IT IS SO ORDERED.